UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.V., | Case No.  24-cv-01911-SVK |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| MARTIN O'MALLEY, et al., | Re: Dkt. No. 11 |
| Defendants. | |

Plaintiff E.V. appeals from the final decision of Defendant Commissioner of Social Security, which denied his application for disability insurance benefits.  The Parties have consented to the jurisdiction of a magistrate judge.  *See* Dkts. 6-7.  For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (the "Motion" at Dkt. 11-1).

## I.    BACKGROUND

In July 2019, Plaintiff applied for Title II disability insurance benefits, alleging a disability onset date of January 15, 2019.  *See* AR 361.[1]  Defendant denied Plaintiff's application on December 10, 2019, and request for reconsideration of that denial on May 6, 2020.  *See id.* at 182-87, 189-94.  Plaintiff then returned to work on May 17, 2020, and requested a hearing before an Administrative Law Judge ("ALJ") to reassess his claim on June 4, 2020.  *See* Motion at 2; AR 195.  Plaintiff subsequently appeared for a hearing before an ALJ on March 9, 2021.  *See* AR 38-68.  The ALJ denied Plaintiff's claim on May 26, 2021.  *See id.* at 150-67.  Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council remanded his claim for further review by an ALJ.  *See id.* at 168-74.  In a brief he submitted following remand, Plaintiff proposed to cut off his period of disability at May 17, 2020 (*i.e.*, the day he returned to work).  *See id.* at

---

[1] The Administrative Record is available at Dkts. 8 through 8-8.

1    725.  He then appeared for a hearing before an ALJ on December 6, 2022.  *See id.* at 69-110

2    ("Hr'g Tr.").

3         The ALJ denied Plaintiff's claim on April 5, 2023.  *See* AR 7-30 (the "ALJ Decision").

4    She first rejected Plaintiff's request to add a cutoff date to his alleged period of disability.  *See id.*

5    at AR 11.  Nevertheless, she acknowledged that Plaintiff had returned to work in late May 2020

6    and accordingly denied his claim to the extent he sought a finding of disability for any time after

7    June 1, 2020.  *See id.* at AR 13.  She therefore focused the bulk of her analysis on whether

8    Plaintiff had been disabled for the period January 15, 2019 (the alleged onset date), through May

9    31, 2020 (the last day before Plaintiff's return to work disqualified him from receiving benefits).

10   *See id.* at AR 14.

11        The ALJ found that Plaintiff has the following severe impairments:  "degenerative disc

12   disease of the lumbar spine with scoliosis and obesity."  *See id.* at AR 14-16.  She also found that

13   these impairments (both individually and in combination) do not meet or medically equal the

14   requirements of any of the impairments listed in 20 C.F.R. Section 404, Subpart P, Appendix 1.

15   *See id.* at AR 16-17.  She then found that Plaintiff maintains a residual functional capacity

16   ("RFC") "to perform light work," but with certain limitations.  *See id.* at AR 17-22.  Finally, she

17   found that Plaintiff "is able to perform his past relevant work" and that "there are other jobs that

18   exist in significant numbers in the national economy that [Plaintiff] also can perform."  *See id.* at

19   AR 22-24.  In light of these findings, the ALJ concluded that Plaintiff "ha[d] not been under a

20   disability, as defined in the Social Security Act," during the relevant period.  *See id.* at AR 24.

21        Plaintiff subsequently requested that the Appeals Council review the ALJ Decision, and

22   the Appeals Council denied his request.  *See* AR 1-6.  Plaintiff then timely filed an appeal to this

23   Court seeking review of the ALJ Decision.  *See* Dkt. 1.  Now before the Court is Plaintiff's

24   Motion, which was filed pursuant to the Supplemental Rules for Social Security Actions under 42

25   U.S.C. Section 405(g) and is ready for decision without oral argument.  *See* Fed. R. Civ. P. Supp.

26   Soc. Sec. R. 5.

27   ///

28   ///

United States District Court
Northern District of California

2

**II.     ISSUES FOR REVIEW**

In this Order, the Court reviews the following issues:

1.  Did the ALJ err in failing to find that Plaintiff's depressive disorder was severe?

2.  Did the ALJ err in discrediting Plaintiff's subjective statements regarding his symptoms?

3.  Did the ALJ err in failing to ask the vocational expert (the "VE") complete hypotheticals?

**III.     STANDARD OF REVIEW**

The Court is authorized to review Defendant's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *See Brown-Hunter*, 806 F.3d at 492 (citation omitted). The Court's limited role allows it to disturb an ALJ's decision only if that decision is: (1) not supported by substantial evidence; or (2) based on the application of improper legal standards. *See id.*

**Not Supported By Substantial Evidence.** "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations," and this threshold is "not high." *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citation omitted); *see also Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." (quotation marks and citation omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from [Defendant's] conclusion." *Rounds*, 807 F.3d at 1002 (citation omitted). But where "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *See id.* (citation omitted).

**Application Of Improper Legal Standards.** Even if an ALJ commits legal error, the Court will uphold the ALJ's decision if the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the

1    ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the

2    reasons the ALJ asserts." *See id.* (citations omitted).

3    **IV.    DISCUSSION**

4        Plaintiff does not dispute the propriety of the ALJ finding him not disabled because of his

5    return to work as of June 1, 2020, and so the Court will evaluate only whether the ALJ erred in her

6    disability analysis concerning the period January 15, 2019 (the alleged onset date), through May

7    31, 2020 (the last day before Plaintiff's return to work disqualified him from receiving benefits).

8    As discussed below, the ALJ did not commit any error warranting a remand or reversal.

9        **A.    Analysis Of Issue One:  The ALJ Permissibly Failed
            To Find That Plaintiff's Depressive Disorder Was Severe**

10       While the ALJ determined that Plaintiff suffers from severe physical impairments, she did

11   not find that he suffers from any severe mental impairments.  *See* ALJ Decision at AR 14-16.

12   Plaintiff argues that this constituted error because the ALJ should have found his depressive

13   disorder to be severe.  *See* Motion at 10-12.  To support his position, Plaintiff points solely to the

14   November 13, 2019 report of Dr. Jacklyn Chandler.  *See* AR 885-90 (the "Chandler Report").  As

15   relevant to Plaintiff's argument, Dr. Chandler noted that Plaintiff experienced "moderate difficulty

16   enduring the stress of the interview" and concluded that Plaintiff's "ability to interact with the

17   public, supervisors, and coworkers appears to be moderately impaired."  *See id.* at AR 888.  The

18   ALJ considered these "moderate" findings to be unpersuasive because they were not consistent

19   with "the lack of other mood reports outside of [Dr. Chandler's] examination despite other

20   treatment," "the lack of mental health treatment," "minimal cognitive findings" and Plaintiff's

21   "good activities of daily living."  *See* ALJ Decision at AR 21-22.

22       Plaintiff offers four reasons for the Court to reject the ALJ's conclusion.

23       ***First***, Plaintiff argues that medical evidence in the record supports Dr. Chandler's findings.

24   *See* Motion at 11 (citing AR 733, 783, 846, 852).  But all of Plaintiff's cited evidence <u>predates</u> his

25   onset date of January 15, 2019, and accordingly do not justify reversing the ALJ.  *See, e.g.*,

26   *Cheetham v. Colvin*, 31 F. Supp. 3d 1146, 1152-53 (E.D. Wash. 2014) (where ALJ failed to find

27   certain impairments to be severe, no reversible error despite evidence of severity predating alleged

28

United States District Court
Northern District of California

1   onset date); *cf. Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical

2   opinions that predate the alleged onset of disability are of limited relevance." (citation omitted)).

3          ***Second***, Plaintiff argues that his failure to obtain mental-health treatment stems from a

4   failure on the part of his insurance provider to authorize treatment and, accordingly, does not

5   support any finding that his depressive disorder lacked severity.  *See* Motion at 11 (citing AR

6   735); Dkt. 14 (the "Reply") at 3 (citing AR 825-27).  However, Plaintiff's evidence does not

7   reflect that his insurance provider affirmatively declined to authorize mental-health treatment and

8   instead notes only that his physician had not received any response from the insurance provider

9   following Plaintiff's depression screening.  *See* AR 735, 827.  Further, this evidence again

10  predates the alleged onset date, and Plaintiff does not point to any evidence of his insurer stifling

11  his efforts to obtain mental-health treatment during the relevant period.  While one could

12  reasonably interpret the evidence as indicating that Plaintiff failed to obtain mental-health

13  treatment because his insurance provider stonewalled him, one could also reasonably interpret the

14  evidence as supporting the ALJ's position—Plaintiff simply did not pursue mental-health

15  treatment during the relevant period because his depressive disorder was not severe.  Where "the

16  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

17  must be upheld."  *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quotation marks and

18  citation omitted)); *see also King v. Astrue*, 497 F. App'x 758, 760 (9th Cir. 2012) ("[W]here the

19  evidence as a whole can support either outcome, we may not substitute our judgement for the

20  ALJ's." (citations omitted)).

21         ***Third***, Plaintiff argues that the ALJ did not explain why "minimal cognitive impairment . .

22  . [is] in any way inconsistent with the limitations Dr. Chandler described."  *See* Motion at 12.  But

23  the inconsistency is self-evident:  experiencing only <u>minimal</u> impairments is inconsistent with the

24  <u>moderate</u> limitations described by Dr. Chandler.  Further, the ALJ expressly analyzed how

25  Plaintiff's mental impairments impacted his functional limitations and concluded that those

26  impairments "cause[d] no more than 'mild' limitation[s]."  *See* ALJ Decision at AR 15-16.

27         ***Fourth***, Plaintiff argues that the ALJ did not explain why Plaintiff's activities of daily

28  living "are in any way inconsistent with the limitations Dr. Chandler described."  *See* Motion at

United States District Court
Northern District of California

1    12.  The Court disagrees, as the ALJ expressly did do so.  *See* ALJ Decision at AR 15-16 (finding,

2    at worst, "mild" limitations in Plaintiff's "mental functioning" based on his activities of daily

3    living).  Plaintiff also asserts that his activities of daily living are "not comparable to the social

4    functioning required to interact appropriately . . . in a work setting."  *See* Reply at 4.  These

5    activities included, for example, performing chores, shopping, dining out with others and driving.

6    *See* ALJ Decision at AR 18.  The Court agrees that Plaintiff's ability to interact with the public

7    while engaged in such relatively innocuous activity does not present an inconsistency with an

8    inability to interact with the public, coworkers or supervisors under the stresses of a typical work

9    setting.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1 at 12.00C(6)(b) ("Your ability to complete

10   tasks in settings that are highly structured, or that are less demanding or more supportive than

11   typical work settings does not necessarily demonstrate your ability to complete tasks in the context

12   of regular employment during a normal workday or work week."); *see, e.g.*, *Binford v. Colvin*, 113

13   F. Supp. 3d 1067, 1072 (W.D. Wash. 2015) ("Plaintiff's ability to maintain a relationship with his

14   son and father, and his ability to sometimes interact appropriately with doctors during one-time

15   examinations, are not indicative of Plaintiff's ability to maintain competitive work . . . ." (citations

16   omitted)).

17        Thus, to the extent the ALJ discounted Dr. Chandler's opinions based on Plaintiff's

18   purportedly inconsistent activities of daily living, doing so was error.  But her other reasons for

19   discounting Dr. Chandler's report are supported by substantial evidence.  The Court is therefore

20   left with a situation where reasonable minds could interpret the evidence differently, and when

21   that happens, the Court must defer to the ALJ.  *See Farlow*, 53 F.4th at 488; *King*, 497 F. App'x at

22   760.  Accordingly, the ALJ did not commit reversible error in discounting Dr. Chandler's opinions

23   or failing to find that Plaintiff's depressive disorder was severe in light of those opinions.

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Analysis Of Issue Two:  The ALJ Permissibly
Rejected Plaintiff's Testimony About His Symptoms**

"A claimant's subjective symptoms, if credited, are relevant to the determination of a

claimant's [RFC]."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024).  The ALJ found

that Plaintiff maintains the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except he could lift and carry 20 pounds occasionally and 10
> pounds frequently.  He could stand and walk for six hours cumulatively and sit for
> six hours out of an eight-hour workday.  He should not climb ladders, ropes, and
> scaffolds.  He could occasionally climb ramps and stairs.  He should not be
> required to balance as defined in the SCO/DOT.  He could occasionally stoop,
> kneel, crouch, and crawl.

ALJ Decision at AR 17.  Plaintiff argues that the ALJ should have credited his testimony about his

pain causing somewhat frequent absences at work, preventing him from driving and requiring him

to take frequent breaks during the day, his inability to stand, sit or walk for more than a few

minutes at a time and his inability to bend.  *See* Motion at 14; *see also* Hr'g Tr. at AR 84-87.

An ALJ must follow a two-step analysis in evaluating a claimant's subjective statements

abouts their symptoms:

> First, the ALJ must determine whether the claimant has presented objective
> medical evidence of an underlying impairment which could reasonably be expected
> to produce the pain or other symptoms alleged.  If the claimant meets the first test
> and there is no evidence of malingering, the ALJ can only reject the claimant's
> testimony about the severity of the symptoms if she gives specific, clear and
> convincing reasons for the rejection.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotation marks and citations omitted).

The "clear and convincing" standard requires an ALJ to "explain why the medical evidence is

*inconsistent* with the claimant's subjective symptom testimony."  *See Ferguson*, 95 F.4th at 1200

(citation omitted).  An ALJ does not satisfy the standard by pointing to a lack of corroborating

evidence; instead, the ALJ must point to <u>inconsistent</u> evidence.  *See id.* at 1200-01.

Plaintiff offers three reasons why the ALJ did not satisfy the "clear and convincing"

standard.

***First***, Plaintiff argues that the ALJ improperly pointed to Plaintiff's treatment as being

1    mostly limited to chiropractic care for his back.  *See* Motion at 13; ALJ Decision at AR 19-20.

2    The Court agrees with Plaintiff that this lack of evidence of other care does not satisfy the "clear

3    and convincing" standard.  *See Ferguson*, 95 F.4th at 1201 ("[T]he ALJ cannot rely on

4    an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony."

5    (citation omitted)).

6          ***Second***, Plaintiff explained to Dr. Chandler that he needs a cane if his symptoms worsen

7    (*see* Chandler Report at AR 886), and he argues that the ALJ improperly found this statement to

8    "be[] inconsistent with his reports and presentation to" Dr. Chandler.  *See* Motion at 13; ALJ

9    Decision at AR 19.  The Court agrees with Plaintiff and disagrees with the ALJ that potentially

10   needing a cane is inconsistent with anything in Dr. Chandler's report.  Although it does not appear

11   that Plaintiff presented to Dr. Chandler while using a cane, Dr. Chandler nevertheless observed

12   that Plaintiff "walked with a slow, guarded gait" and "appeared to be experiencing physical pain."

13   *See* Chandler Report at AR 887.  These observations are consistent with Plaintiff potentially

14   needing a cane if his symptoms worsened.

15         ***Third***, Plaintiff argues that the "ALJ cited the objective medical evidence, generally, as

16   contradicting [Plaintiff's] alleged limitations, but identified no particular findings which were

17   inconsistent with any of the specific functional deficits [that Plaintiff] described."  *See* Motion at

18   14.  The Court disagrees, as the ALJ expressly referred to the reports of Drs. Thu Do, C. Bullard

19   and Nayyar Masood (which she found to be partially persuasive), in which those doctors noted,

20   *inter alia*, that Plaintiff had fewer limitations with walking, sitting, standing and bending than

21   what Plaintiff reported.  *See* ALJ Decision at AR 20-21.  This is precisely the type of inconsistent

22   medical evidence on which an ALJ may rely in discrediting a Plaintiff's subjective testimony at

23   step two of the inquiry.  *See, e.g.*, *J.B. v. Kijakazi*, No. 23-cv-01855-SVK, 2024 WL 40184, at *6

24   (N.D. Cal. Jan. 2, 2024) ("[T]he ALJ discussed in detail the medical evidence in the record on

25   which she based her rejection of Plaintiff's subjective statements." (citations omitted)); *D.T. v.

26   Kijakazi*, No. 22-cv-07245-SVK, 2023 WL 6852505, at *5 (N.D. Cal. Oct. 17, 2023) (ALJ

27   properly discredited subjective symptom testimony where, *inter alia*, "the ALJ did not merely

28   provide a 'boilerplate statement,' and instead discussed in detail the medical evidence in the

1    record" (citations omitted)).

2          Thus, to the extent the ALJ discounted Plaintiff's symptom testimony because it was

3    inconsistent with his treatment being limited to chiropractic care and his reports and presentation

4    to Dr. Chandler, doing so was error.  However, the ALJ provided clear and convincing reasons to

5    discount Plaintiff's symptom testimony as she pointed to specific medical evidence in the record

6    that was inconsistent with Plaintiff's statements.  Balancing these results, this Court finds that the

7    ALJ's decision to discredit Plaintiff's symptom testimony is supported by substantial evidence,

8    and the errors noted above are harmless.

9          **C.    Analysis Of Issue Three:  The ALJ Did Not
                    Fail To Pose A Complete Hypothetical To The VE**

10          Derivative of Plaintiff's first argument, Plaintiff argues that the ALJ failed to pose a

11   complete hypothetical to the VE because she failed to account for the moderate limitations

12   discussed in the Chandler Report.  *See* Motion at 14-15.  As discussed above, the ALJ properly

13   discounted the Chandler Report to the extent Dr. Chandler opined that Plaintiff suffered from

14   certain moderate limitations.  The ALJ's hypotheticals, therefore, were not incomplete for failing

15   to incorporate these moderate limitations.

16   **V.    CONCLUSION**

17          For the foregoing reasons, the Court **DENIES** the Motion.

18          **SO ORDERED.**

19   Dated: December 19, 2024

20

21

22                                              _____
                                                SUSAN VAN KEULEN
23                                              United States Magistrate Judge

24

25

26

27

28

*United States District Court*
*Northern District of California*

9